COPY

1  HERRICK, FEINSTEIN LLP
2  David Feuerstein (*pro hac vice* application pending)
   E-mail: dfeuerstein@herrick.com
   Jessica Natbony (*pro hac vice* application pending)
3  E-mail: jnatbbony@herrick.com
   2 Park Avenue
4  New York, New York 10016
   Telephone: (212) 592-1400
5
   KAWAHITO SHRAGA & WESTRICK LLP
6  David R. Shraga (SBN 229098)
   E-mail: dshraga@kswlawyers.com
7  1990 S. Bundy Dr., Ste. 280
   Los Angeles, California 90025
8  Phone: (310) 746-5300
   Facsimile: (310) 593-2520
9

E-FILING

ORIGINAL FILED

MAY 1 4 2013

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

10  Attorneys for Plaintiff ENKI Corporation

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      SAN JOSE DIVISION

15

CV13-02201 PSG

| | |
|---|---|
| 16  ENKI CORPORATION (f/k/a ENKI, LLC), | Case No.: |
| 17 | |
| 18              Plaintiff, | **COMPLAINT FOR:** |
| 19  vs. | **(1) Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.);** |
| 20  KEITH FREEDMAN, an individual, | |
| 21  FREEFORM TECHNOLOGIES, LLC, | |
| 22  a California limited liability company; | **(2) Violation of Computer Data Access and Fraud Act (Cal. Penal Code § 502);** |
| 23  ZUORA, INC., a corporation of | |
| 24  unknown origin; and DOES 1 through | **(3) Breach of Contract;** |
| 25  100, | **(4) Breach of Contract;** |

26

27

28

---

COMPLAINT

Defendants.

(5) **Breach of Contract;**

(6) **Misappropriation of Trade Secrets (Cal. Civ. Code § 3426 et seq.)**

(7) **Intentional Interference with Contractual Relations;**

(8) **Common Law Unfair Competition; and**

(9) **Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)**

## DEMAND FOR JURY TRIAL

COMPLAINT

Plaintiff ENKI Corporation (formerly known as ENKI, LLC ("ENKI" or the "Company"), by and through its undersigned attorneys, as and for its Complaint against Keith S. Freedman ("Freedman"), Freeform Technologies, LLC ("Freeform"), Zuora, Inc. ("Zuora"), and DOES 1 through 100, alleges as follows:

## PRELIMINARY STATEMENT

1.     This action for money damages and equitable relief arises out of Freedman's repeated attempts to destroy ENKI's valued relationship with its client, Zuora.

2.     As set forth more fully below, Freedman -- who, until May 2011, was a member of ENKI -- has engaged in a course of bad faith conduct (ranging from simple breach of contract to the violation of a federal computer fraud statute) in an effort to depict ENKI as an incompetent and unnecessary consultant and to convince Zuora to leave ENKI and retain Freeform, a company wholly owned by Freedman, for its cloud computing expertise and other enterprise grade IT services.

3.     In so doing, Freedman has (i) violated 18 U.S.C. § 1030 et seq. by accessing certain servers and downloading ENKI's trade secrets and proprietary information that belonged solely to ENKI, (ii) breached the parties' separation agreement dated June 8, 2011 (the "Separation Agreement"), by (a) failing to keep the contents of the Separation Agreement confidential, (b) criticizing, denigrating or disparaging ENKI to Zuora personnel (and perhaps others), and (c) ignoring the non-competition, non-solicitation and non-disclosure of proprietary information provisions contained in the parties' earlier agreement, and (iii) otherwise tortiously interfered with ENKI's relationship with Zuora.

4.     Notably, Freedman's efforts to harm ENKI and its relationship with Zuora appear to have been successful. In fact, Freedman has now effectively "tak[en] over the duties" that ENKI was performing at Zuora (by, inter alia, using

1  ENKI's Proprietary Information (as that term is defined in the relevant
2  agreement).

3         5.     Freedman's misconduct was made possible, in part, by Zuora,
4  who conspired with Freedman to misappropriate ENKI's trade secret information
5  (and, as a result, both Zuora and Freedman induced each other to breach their
6  contractual obligations to ENKI).   Upon information and belief, Freedman,
7  Freeform, and Zuora are now using ENKI's Proprietary Information to monitor
8  Zuora's data center without having to pay ENKI for the benefit of its expertise and
9  trade secret technologies.

10         6.     Accordingly,   ENKI   seeks   an   order   (i)   enjoining   the
11  Defendants' illicit conduct, (ii) awarding ENKI money damages in an amount to
12  be determined at trial, but in no event less than $1 million, and (iii) for whatever
13  additional relief the Court determines is just and proper.

14
15  **JURISDICTIONAL STATEMENT**

16         7.     The First Claim for Relief arises under the Computer Fraud
17  and Abuse Act, 18 U.S.C. §§ 1030 et seq.  This Court has original subject matter
18  jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338.

19         8.     The other claims for relief arise under California statutory and
20  common law.   This Court has subject matter jurisdiction over these claims
21  pursuant to 28 U.S.C. § 1338(b) because the claims are joined with substantial and
22  related claims under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et
23  seq.  This Court also has subject matter jurisdiction of these claims on the basis of
24  supplemental jurisdiction under 28 U.S.C. § 1367(a), because (i) the federal and
25  state law claims asserted herein are based upon the same operative facts, (ii) the
26  Court's exercise of jurisdiction over the pendent state law claims will promote
27  judicial economy, convenience, and fairness to the parties, and (iii) such claims

28

1   are so related to the First Claim for Relief that they form part of the same case or

2   controversy under Article III of the United States Constitution.

3

4                          **INTRADISTRICT ASSIGNMENT**

5           9.     Venue is proper in this judicial District pursuant to 28 U.S.C. §

6   1391(b) because a substantial part of the events or omissions giving rise to the

7   claims asserted herein occurred or had effects in this District, and because all

8   named parties hereto reside in this District for purposes of 28 U.S.C. § 1391(b);

9   conduct business in this District, among other things, engaging in the violations of

10  federal statutory law set forth herein; and are subject to personal jurisdiction in

11  this District.

12          10.    Pursuant to the Local Rules 3-2 and 3-5 of the United States

13  District Court for the Northern District of California, assignment to the San Jose

14  Division of this District Court is appropriate because a substantial part of the

15  events or omissions which give rise to the claims set forth herein occurred in

16  Santa Clara County, which is located within this Division.

17

18                                **THE PARTIES**

19          11.    Plaintiff is a Colorado corporation with its principal place of

20  business located 2135 S. Cherry Street, Suite 240, Denver, Colorado 80222, and

21  conducts business in Santa Clara County, within this judicial District.  Plaintiff

22  was formerly known as ENKI, LLC.

23          12.    Upon information and belief, Defendant Freedman is an

24  individual residing in San Francisco, California, and he conducts business in Santa

25  Clara County, within this division of this judicial District.

26          13.    Upon information and belief, Defendant Freeform is a

27  California limited liability company, with its principal place of business located at

28  P.O. Box 14843, San Francisco, California.  Upon further information and belief,

1 Freeform conducts business in Santa Clara County, within this division of this
2 judicial District and is the alter ego of Freedman, such that Freeform's purported
3 separate corporate existence should be ignored.

4        14.   Upon information and belief, Defendant Zuora, is a
5 corporation of unknown origin, with a place of business located in Redwood City,
6 in San Mateo County, California.   Upon further information and belief, Zuora
7 conducts business in this division of this judicial District.

8        15.   Plaintiff does not know the true names and capacities of the
9 defendants sued herein as Does 1 through 100, and therefore sues those
10 defendants by such fictitious names.   Plaintiff will seek leave to amend this
11 Complaint to set forth those defendants' true names and capacities when they
12 become known.   Upon information and belief, each of the fictitiously-named
13 defendants acted as an agent, employee, servant, principal, partner, shareholder,
14 co-conspirator, aider or abettor, or are otherwise responsible for the acts and
15 omissions alleged in this Complaint.   Freedman, Freeform, Zuora, and DOES 1
16 through 100 are collectively referred to herein as "Defendants."

17        16.   Upon information and belief, each of the Defendants, including
18 Freedman, Freeform, and Zuora, conspired with each other in order to conduct
19 and conceal their wrongful activities.   Each of the Defendants entered into an
20 actual agreement with each other to participate in the wrongdoing alleged herein,
21 with awareness of the wrongful nature and unlawful object of these activities, and
22 with the intent to knowingly give substantial assistance and encouragement to
23 these wrongful activities.   Upon information and belief, the Defendants also
24 therefore aided and abetted each other in furtherance of their wrongful activities.

25        17.   Upon information and belief, as the officer, manager, or
26 member who was otherwise in control of Freeform, Freedman committed the
27 wrongful conduct himself, and also orchestrated, authorized, managed,

28

participated in, oversaw, was aware of, allowed, and was responsible for the wrongful activities engaged in by Freeform.

## **BACKGROUND**

18.     From August 8, 2006 to May 2011, Freedman was a 12% interest- holding member of ENKI, the business of which was to acquire, manage, develop, improve, and operate cloud computing and other enterprise-grade IT services.

19.     In May of 2011, Freedman verbally resigned his position at ENKI.  As Freedman later conceded, he resigned in large part due to his animus toward David Durkee, the CEO of ENKI.

20.     To memorialize Freedman's resignation, the parties executed the Separation Agreement, which Freedman executed on or about June 29, 2011.

21.     Pursuant to the terms of the Separation Agreement, the parties' agreed that (i) the Company would repurchase Freedman's membership interest in ENKI and that ENKI would make a lump sum payment to Freedman for that interest, (ii) neither party would disclose the terms of the agreement, (iii) neither party would criticize, denigrate, or disparage the other party, and (iv) Freedman would continue to be bound by the noncompetition covenants contained in the parties' amended and restated operating agreement dated as of March 1, 2011 (the "Operating Agreement").

22.     The noncompetition covenants embodied in Section 9.8 of the Operating Agreement ("Section 9.8") provide, in relevant part, as follows:

> (A)     Covenant of Non-solicitation.  Each of the Service Providing Members agrees that during the time the Service Providing Member serves as a Manager, officer, director, employee and/or consultant of the Company or the Service

Providing Member (or an Affiliate of the Service Providing Member) is a Member of the Company and for a period of two years after termination of all such relationships with the Company (such termination date, the "Termination Date"), the Service Providing Member will not, directly or indirectly, (1) solicit the services of any Person who was, within one year prior to the Termination Date, an employee, officer, director or consultant of the Company, (2) interfere with any Person who was, within one year prior to the Termination Date, an employee or officer of the Company for any purpose that may have an adverse effect upon the Company's business activities, or (3) solicit the business of any Person who was, within one year prior to the Termination Date, a customer or client of the Company.

(B)   Covenant of Non-Competition.…[E]ach of the Service Providing Members agrees that during the time the Service Providing Member serves as a Manager, officer, director, employee and/or consultant of the Company or during the time the Service Providing Member (or an Affiliate of the Service Providing Member) is a member of the Company and for a period of two years after the Termination Date, the Service Providing Member will not, in the Restricted Territory, directly or

indirectly (through one or more intermediaries), whether individually, or as an officer, director, employee or consultant, compete, in whole or in part with, or assist any Person in competing in whole or in part with, the business engaged in by the Company.

(C)   <u>Covenants Regarding Proprietary Information.</u>

(1)   "<u>Proprietary Information</u>" shall mean any and all methods, inventions, improvements or discoveries, whether or not patentable or copyrightable, and any other information of a similar nature disclosed to, or discovered or originated by, the Members or otherwise obtained by the Members prior to or after the date of this Agreement that relate to Cloud Computing, operations services outsourcing, IT service automation, and high performance scalable data center design…or as a consequence or through the Members' engagements by the Company in any technological area previously developed by the Company or developed, engaged in, or researched by the Company, or related to any technology transferred to the Company by one or more of the Members and any other information of a secret, proprietary, confidential or generally undisclosed nature relating to the Company, its products, customers, processes and services, including, but

not limited to, trade secrets, processes, products, programs, formulae, apparatus, techniques, know-how, marketing plans, data, improvements, strategies, forecasts, customer lists, and technical requirements of customers and information relating to resting, research, development, software deployment and production computing services, utility-billing, marketing and selling, unless such information is in the public domain to such an extent as to be readily available to competitors.

(2) ...[E]xcept as required in the performance of the Members' duties to the Company, each of the Members agrees that he will not at any time during or after the term of the Member's engagement as an employee, officer, director, consultant and/or member of the Company, directly or indirectly use, communicate, disclose or disseminate any Proprietary Information.

(D) <u>Specific Enforcement; Legal Fees</u>. Each of the Service Providing Members acknowledges that a breach of this Section 9.8 is likely to result in irreparable and unreasonable harm to the Company, and that injunctive relief, as well as damages, would be appropriate. If a Service Providing Member breaches this Section, the

1                    Service Providing Member shall promptly

2                    reimburse the Company for all legal fees (and

3                    disbursements) incurred by the Company to

4                    enforce this Section or to pursue remedies arising

5                    as a result of such breach.

23. Months after Freedman left ENKI, the Company entered into a master services agreement dated as of January 4, 2012 (the "MSA") with Zuora, pursuant to which ENKI agreed to provide Zuora with consulting, cloud computing operations and other enterprise-grade IT services.

24. To help service this new client, ENKI engaged Freeform, an entity wholly owned by Freedman, to perform certain limited work for Zuora, and memorialized the terms of Freeform's engagement in a purchase order dated as of February 22, 2012 (the "Purchase Order").

25. Upon information and belief, Freedman influences and governs Freeform and maintains a unity of interest and ownership such that the individuality or separateness of Freeform and Freedman has ceased, and adherence to the fiction of the separate existence of Freeform would, under the circumstances presented by this case, sanction a fraud or promote injustice. Upon further information and belief (i) Freeform and Freedman have commingled funds and other assets, failed to segregate funds of the separate entities, and diverted corporate funds or assets to other than corporate uses, (ii) Freedman has treated the assets of Freeform as his own, (iii) Freedman is the controlling officer, manager, and member of Freeform, (iv) Freedman has failed to adequately capitalize Freeform, (v) Freeform is used as a mere shell, instrumentality, or conduit for the business of Freedman, and (vi) Freedman has disregarded legal formalities vis-à-vis Freeform and failed to maintain arm's length relationships with it.

26.     Upon information and belief, when Freedman arrived at Zuora as an ENKI "subcontractor", he immediately sought to be hired by Zuora and attempted to undermine ENKI's engagement.

27.     ENKI made clear that it was concerned about Freedman's conduct and the possibility that he may engage in conduct that could destroy ENKI's relationships with its customers (including Zuora).    In fact, after Freedman delayed executing and returning the Purchase Order, Eric Novikoff, ENKI's COO, wrote Freedman and explained that ENKI would "like to be able to confidently deploy you as a subcontractor representing ENKI without worrying about damaging ou[r] relationship with the customer."

28.     Ultimately, Freedman executed and returned the Purchase Order, which made clear that its initial term was for three months (the "Term") with the availability of week-to-week renewals.  Notably, the Purchase Order did not overwrite or trump any provisions of the Separation or Operating Agreements. Thus, while Freedman was working for ENKI at Zuora, he could not disparage ENKI or otherwise compete with ENKI.  Nor, for that matter, could Freedman reveal the terms of the Separation Agreement to individuals at Zuora, or use ENKI's Proprietary Information without ENKI's consent.

29.     Notwithstanding these prohibitions, Freedman often disparaged ENKI in front of, or to, Zuora personnel.  On at least one occasion, Freedman "ghost-authored" an email on behalf of a Zuora employee complaining about ENKI's performance at Zuora.  And in another email, which Freedman himself had edited, Freedman endorsed the view that "ENKI hasn't set things up yet . . . and it also sounds like they [meaning ENKI] didn't abide by their original contract commitments."   In that same email, the Zuora employee designated Freedman to explain just how ENKI purportedly failed to abide by the original contract commitments.

30.   Upon information and belief, the above-referenced e-mail concerning ENKI's purported failures could not have been written without Freedman's input (which itself constitutes a breach of the non-disparagement provision in the Separation Agreement).

31.   Upon information and belief, Freedman often told personnel at Zuora that ENKI was doing sub-par work in an effort to portray himself (and Freeform) as a better option than ENKI for providing comparable services as ENKI going forward.

32.   Freedman also breached the Separation and Operating Agreements by using the Proprietary Information that he had learned at ENKI for his own financial gain, and to further interfere with ENKI's relationship with Zuora.

33.   For example, ENKI pioneered the use of Infiniband for networking in general purpose data-centers. (Previously, Infiniband was primarily used for research or government technologies).

34.   The use of Infiniband for networking data-centers is a proprietary method developed by ENKI's expenditure of resources of expertise. Thus, pursuant to the terms of the Operating Agreement, ENKI's use of Infiniband constitutes Proprietary Information, including because it gives ENKI a competitive advantage over its competitors who engage in similar cloud computing businesses and the consulting opportunities derived from such businesses.

35.   ENKI recommended to Zuora that it use Infiniband, and based on ENKI's recommendation, Zuora decided to use Infiniband for the data center on which ENKI was working.

36.   Freedman was a member of ENKI when it first started using Infiniband for networking in general purpose data centers and learned how to use Infiniband for these purposes while at ENKI.

37. Now, despite the prohibitions against competition and solicitation of ENKI's clients and the unauthorized use of Proprietary Information, Freedman has used his expertise with Infiniband to take over ENKI's role at Zuora. Upon information and belief, Freedman never told Zuora that he was bound by any non-competition or non-solicitation provisions (or that either such provisions even existed) and/or that he could not use ENKI's Proprietary Information -- which included his knowledge of Infiniband -- without ENKI's authorization. Zuora, however, learned of such prohibitions from discussions it had with ENKI.

38. Freedman also acquired other Proprietary Information while at ENKI -- such as expertise in the use of the Oracle/Sun 7310 Open Storage system and knowledge of Nimsoft software -- all at ENKI's expense and has continued to use that Proprietary Information to oust ENKI from its relationship with Zuora.

39. In fact, ENKI recently learned that Freedman -- with Zuora's knowledge, consent and assistance -- accessed certain Nimsoft servers for the purpose of copying certain ENKI Proprietary Information that ENKI uses to monitor Zuora's data center.

40. The parties' agreements (and, in particular, the Statement of Work dated February 23, 2012), required ENKI to configure certain software and information to monitor Zuora's networks. The agreements also made clear that unless the software being utilized to perform these services was owned by Zuora previously, any new configurations and software created by ENKI would be owned by ENKI. Those agreements also make clear that ENKI owns the Proprietary Information that it uses to monitor Zuora's data center and neither Zuora nor Freedman had (or has) the right or authority to access these servers and/or copy the data and information that belongs to ENKI.

41.   Upon information and belief, Freedman accessed these Nimsoft servers -- and copied ENKI's Proprietary Information -- to assure Zuora that ENKI was superfluous and could be replaced by Freeform.

42.   Finally, Freedman has breached the Separation Agreement by revealing its terms to individuals at Zuora.

43.   In or around late August of 2012, well after the expiration of the Term, ENKI notified Freeform and Freedman that it would not be renewing the Purchase Order.

44.   Shortly thereafter, Freedman accepted direct employment as a consultant for Zuora (even though (i) Freedman was still prohibited from competing with ENKI, and (ii) Zuora was prohibited from soliciting ENKI's "employees" without ENKI's consent).

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (By Plaintiff for Violation of Computer Fraud and Abuse Act (18 U.S.C. §§ 1030 et seq., Against All Defendants)

45.   ENKI repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

46.   Defendants have violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate or foreign commerce or communication, without ENKI's authorization, and by obtaining information from such a protected computer.

47.   Defendants have violated the CFAA, 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud ENKI, accessing a protected computer, without authorization or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including content from the Nimsoft server.

48. The computer system or systems that Defendants accessed as described above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

49. ENKI has suffered damages by reason of Defendants' violations, including, without limitation, the appropriation of its Proprietary Information, data, programs, and computer systems, and other losses and damage in an amount to be proven at trial, and well in excess of $5,000 aggregated over a one year period.

50. Defendants' unlawful access to ENKI's computers has caused ENKI irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. ENKI's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling ENKI to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (By Plaintiff for Violation of Computer Data Access and Fraud Act (Cal. Penal Code § 502) Against All Defendants)

51. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

52. Defendants have violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from ENKI's computers, computer systems, and/or computer networks.

53. Defendants have violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission, accessing and using ENKI's computer services.

54.   Defendants have violated California Penal Code § 502(c)(7) by knowingly, fraudulently, and without permission, accessing, or causing to be accessed, ENKI's computers, computer systems, and/or computer networks.

55.   ENKI owns certain data that comprises information obtained by Defendants as alleged above.

56.   As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused damage to Plaintiff in an amount to be proven at trial. Plaintiff is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code §502(e).

57.   Upon information and belief, the aforementioned acts of Defendants were willful and malicious in that Defendants' above-described acts were done with the deliberate intent to injure ENKI's business and improve its own. ENKI, therefore, is entitled to punitive damages.

58.   ENKI has also suffered irreparable injury from these acts, and due to the continuing threat of such injury, has no adequate remedy at law, entitling ENKI to injunctive relief.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (By Plaintiff for Breach of Contract Against Freedman)

59.   Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

60.   At all times relevant hereto, ENKI performed all of its obligations under the Operating and Separation Agreements, which are binding and enforceable agreements between ENKI and Freedman.

61.   Paragraph 11 of the Separation Agreement explicitly incorporates Section 9.3, which precludes Freedman from (i) soliciting any client or customer of ENKI within two years following a termination event, (ii)

competing with the Company within two years following a termination event, and (iii) utilizing ENKI's "Proprietary Information."

62.    Upon information and belief, Freedman solicited direct employment at Zuora, and used and continues to use ENKI's Proprietary Information in furtherance of his work at Zuora and to the detriment of the Company's own service offerings.

63.    Section 9.3 as incorporated into the Separation Agreement contains enforceable non-competition provisions pursuant to California Business and Professions Code § 16601, as the Separation Agreement involved the buy-back of Freedman's substantial ownership interest, represented the goodwill of ENKI, and because ENKI carries on a business that is like and similar to that which it conducted when Freedman sold all of his ownership interest to the Company.

64.    As a direct and proximate result of Freedman's breach of the covenants of non-competition, Plaintiff has suffered damages in an amount to be determined at trial, and, pursuant to Section 9.3(D), is entitled to injunctive relief and attorneys' fees.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (By Plaintiff for Breach of Contract Against Freedman)

65.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

66.    At all times relevant hereto, ENKI performed all of its obligations under the Separation Agreement, which is a binding and enforceable agreement between ENKI and Freedman.

67.    Paragraph 7 of the Separation Agreement precludes either party from disclosing the terms and conditions of the agreement.

68.   Upon information and belief, Freedman conveyed details of the financial arrangement under the terms of the Separation Agreement to a Zuora official (and possibly multiple Zuora officials) and further stated that there was animus between Freedman and ENKI.

69.   Freedman's disclosure of the terms and conditions of the Separation Agreement constitutes a breach of the Separation Agreement.

70.   As a direct and proximate result of Freedman's breach of the Separation Agreement, Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (By Plaintiff for Breach of Contract Against Freedman)

71.   Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

72.   At all times relevant hereto, ENKI performed all of its obligations under the Separation Agreement, which is a binding and enforceable agreement between ENKI and Freedman.

73.   Paragraph 8 of the Separation Agreement precludes either party from "criticiz[ing], denigrat[ing], or disparag[ing] the other party (including, in the case of ENKI, its directors, officers and employees)."

74.   As set forth above, Freedman made disparaging comments to employees and officers of Zuora about ENKI that have served to detrimentally affect Zuora's attitude towards the Company.

75.   Freedman's conduct in disparaging, denigrating, and criticizing ENKI constitutes a breach of the Separation Agreement.

76.   As a direct and proximate result of Freedman's breach of the Separation Agreement, Plaintiff has suffered damages in an amount to be determined at trial.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

**(By Plaintiff for Misappropriation of Trade Secrets in Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code Section 3426 et seq.) Against All Defendants)**

77.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

78.     At all relevant times, and as set forth above, ENKI was in possession of trade secret and confidential information as defined by California Civil Code § 3426.1(d).  Among other things, ENKI's use of Infiniband and the Proprietary Information constitute trade secrets under the California Uniform Trade Secrets Act because ENKI derives independent economic value from the confidential and trade secret information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information has been the subject of reasonable efforts by ENKI to maintain its secrecy.

79.     Freedman, through Freeform, and in concert with Zuora, has misappropriated ENKI's trade secrets and Proprietary Information, by using ENKI's trade secret and confidential information to directly compete with ENKI's services, giving Defendants an economic advantage that they would not have had without the confidential information.

80.     As a proximate result of said acts of misappropriation and use of ENKI's trade secrets, ENKI has lost profits and will continue to lose profits until Defendants are enjoined from using ENKI's trade secrets.

81.     As an additional proximate result of Defendants' acts of misappropriation and use of ENKI's trade secrets, ENKI is informed and believes that Defendants have been unjustly enriched in an amount subject to proof at trial.

82.     As an additional proximate result of Defendants' acts of misappropriation, ENKI has sustained, and will continue to sustain, great and

- 18 -

irreparable injury in that ENKI will lose customers and good will. ENKI has no adequate remedy at law for these injuries. Unless Defendants are restrained from using the confidential and proprietary information in the future, ENKI will be compelled to bring a multiplicity of suits to protect its interests.

83.    Upon information and belief, Defendants committed their acts of misappropriation willfully and maliciously in that Defendants intended by their conduct to drive ENKI out of its relationship with Zuora so as to render the need for its proprietary services unnecessary. Defendants' conduct entitles Plaintiff to recover an award of exemplary damages in an amount equal to twice Plaintiff's actual damages as well as reasonable attorneys' fees.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (By Plaintiff for Intentional Interference with Contractual Relations Against Defendants Freedman, Freeform, and DOES 1 through 100)

84.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

85.    A valid contract existed between ENKI and Zuora.

86.    Defendant Freedman, Freeform, and DOES 1 through 100 were fully aware of the agreement between ENKI and Zuora.

87.    Notwithstanding such knowledge, these defendants willfully engaged in conduct designed to disrupt the relationship between ENKI and Zuora, including disparaging ENKI (in breach of contractual obligations), and using the confidential and proprietary information that Freedman had obtained through his employment at ENKI (also in breach of contractual obligations).

88.    Such wrongful conduct caused an actual disruption of the contractual relationship between ENKI and Zuora because, upon information and belief, Freedman led Zuora to believe that ENKI was doing a less-than stellar job

1    (even though that was not the case) and otherwise disparaged ENKI in front of

2    Zuora personnel.

3              89.    As a direct and proximate cause of Defendants' conduct, ENKI

4    has suffered economic loss, and is entitled to damages resulting from the loss of

5    its contractual relationship with Zuora.

6

7              **AS AND FOR AN EIGHTH CLAIM FOR RELIEF**

8    **(By Plaintiff for Common Law Unfair Competition Against All Defendants)**

9              90.    Plaintiff repeats and realleges each and every allegation set

10   forth in the foregoing paragraphs as if same were fully set forth herein.

11             91.    Plaintiff has invested substantial time and money in

12   development of its trade secrets and Proprietary Information. Upon information

13   and belief, Defendants have appropriated that property at little or no cost to

14   Defendants. Defendants have used unlawful and unfair means to unfairly compete

15   with Plaintiffs, including breach of contract, violation of the CFAA and Cal. Penal

16   Code section 502, interference with contractual relations, and misappropriation of

17   trade secrets. Such conduct constitutes unfair competition.

18             92.    As a direct and proximate cause of such unfair competition,

19   Plaintiff has been damaged in an amount to be proven at trial. Unless and until

20   restrained and enjoined from further unfair competition, Defendants will continue

21   to unfairly compete with Plaintiff.

22             93.    Upon information and belief, the above acts by these

23   Defendants were done intentionally, with malice and oppression toward Plaintiff,

24   and with the intent of injuring Plaintiff in its business or in such conscious

25   disregard of Plaintiff's rights that Plaintiff is thereby entitled to an award of

26   exemplary or punitive damages against Defendants in an amount to be proven at

27   trial.

28

94.     Unless restrained, Defendants will continue to engage in unfair competition and cause irreparable harm to which there is no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### (By Plaintiff for Unfair Competition Under Business & Professions Code Section 17200 et seq. Against All Defendants)

95.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if same were fully set forth herein.

96.     Defendants' conduct alleged above was unfair, fraudulent, and unlawful, and therefore constitutes unlawful and unfair business acts which significantly threaten and/or harm competition and constitutes unfair competition in violation of California's Business & Professions Code § 17200, et seq.

97.     Plaintiff is entitled to Court orders against Defendants as necessary to prevent this unfair competition, including an injunction and, if necessary, for restitution and disgorgement of any funds received, which are necessary to restore money or property to Plaintiff that were acquired by Defendants by means of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants Freedman, Freeform, Zuora, and the Doe Defendants as appropriate to the claim, and specifically for relief as follows:

1.     Compensatory Damages, in a sum according to proof;

2.     Exemplary or Punitive Damages, in a sum according to proof;

3.     An Order to protect Plaintiff's trade secrets and Proprietary Information;

1    4.    An Order to prevent Defendants from unfairly competing with

2    Plaintiff;

3    5.    An accounting from Defendants of their use of Plaintiff's trade

4    secrets and Proprietary Information for their benefit;

5    6.    For an order and judgment that Defendants pay restitution based on

6    their own unjust enrichment and disgorge and restore all funds received by means

7    of their unfair, unlawful and fraudulent acts and practices;

8    7.    A constructive trust for the benefit of Plaintiff to be imposed upon all

9    funds, assets, revenues and profits Defendants have or will derive from their

10   unfair, unlawful and fraudulent acts and their misappropriation of Plaintiff's trade

11   secrets and Proprietary Information;

12   8.    For a temporary restraining order, preliminary injunction and

13   permanent injunction each enjoining Defendants, and each of them, and each of

14   their agents, employees, and/or representatives, and any and all persons or entities

15   acting under their direction and control, from, without further order of the Court

16   or Plaintiff's written consent:

17        (a)    accessing Plaintiff's servers, computers, networks, or any other

18   repositories of Plaintiff's trade secret and Proprietary Information;

19        (b)    using or disclosing in any fashion any of Plaintiff's trade

20   secrets or Proprietary Information; and

21        (c)    refusing to return all documents and files (electronic,

22   computer, or hard copy) that reflect or include any of Plaintiff's trade secrets or

23   Proprietary Information;

24   9.    For a temporary restraining order, preliminary injunction and

25   permanent injunction each enjoining Freedman, and each of his agents,

26   employees, and/or representatives, and any and all persons or entities acting under

27   his direction and control, from, without further order of the Court or Plaintiff's

28   written consent, continuing to unlawfully compete with Plaintiff by soliciting and

1   working with Zuora, Inc., or any of Plaintiff's other customers who are subject to

2   the terms of the Separation and Operating Agreements;

3      9.    Prejudgment interest;

4      10.   Attorneys' fees pursuant to Civil Code Section 3426.4, Penal Code

5   Section 502(e), and contract;

6      11.   Costs of suit; and

7      12.   For such other and further relief as the Court may deem just and

8   proper.

9

10                    **DEMAND FOR JURY TRIAL**

11

12      Plaintiff hereby demands a trial by jury on all matters so triable.

13

14

15   DATED:   May 13, 2013        HERRICK, FEINSTEIN LLP
                                  David Feuerstein (*pro hac vice* pending)
16                                Jessica Nathony (*pro hac vice* pending)

17                                KAWAHITO SHRAGA & WESTRICK LLP
                                  David R. Shraga
18

19

20                                By: _____
                                       DAVID R. SHRAGA
21
                                  Attorneys for Plaintiff
22                                ENKI CORPORATION

23

24

25

26

27

28

                              - 23 -
                              COMPLAINT