HERRICK, FEINSTEIN LLP
David Feuerstein (admitted *pro hac vice*)
E-mail: dfeuerstein@herrick.com
Jessica Natbony (admitted *pro hac vice*)
E-mail: jnatbony@herrick.com
Marisa Leto (admitted *pro hac vice*)
E-mail: mleto@herrick.com
2 Park Avenue
New York, New York 10016
Telephone: (212) 592-1400

KAWAHITO SHRAGA & WESTRICK LLP
David R. Shraga (SBN 229098)
E-mail: dshraga@kswlawyers.com
1990 S. Bundy Dr., Ste. 280
Los Angeles, California 90025
Phone: (310) 746-5300
Facsimile: (310) 593-2520

Attorneys for Plaintiff ENKI Corporation

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENKI, CORPORATION (f/k/a ENKI, LLC)<br><br>Plaintiff,<br><br>vs.<br><br>KEITH FREEDMAN et al.,<br><br>Defendants. | Case No.: 5:13-CV-02201-PSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS ENKI CORPORATION'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**<br><br>[DECLARATION OF DAVID DURKEE IN SUPPORT FILED CONCURRENTLY HEREWITH]<br><br>**Date:** October 22, 2013<br>**Time:** 10:00 a.m.<br>**Courtroom:** 5, 4th Floor |

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES.................................................................................1

PRELIMINARY STATEMENT .............................................................................2

STATEMENT OF FACTS ......................................................................................4

    A.   The Parties' Relationships ........................................................................4

    B.   Nimsoft ...................................................................................................5

    C.   Freedman Interferes with ENKI's Relationship with Zuora....................7

LEGAL ARGUMENT.............................................................................................8

POINT I
THE FAC STATES A CLAIM FOR RELIEF UNDER THE COMPUTER FRAUD
AND ABUSE ACT...................................................................................................9

    A.   The FAC Sufficiently Alleges That Defendants Accessed ENKI's Protected Computers
        Without Authorization or in Excess of Their Authorized Access ............10

    B.   ENKI Has Alleged the Type of Damages/Loss Recognized by the CFAA....................12

POINT II
ENKI STATES A CLAIM UNDER THE COMPUTER DATA ACCESS AND
FRAUD ACT ("CDAFA") ....................................................................................15

POINT III
THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S
BREACH OF CONTRACT CLAIMS BECAUSE THEY ARE PART OF THE
SAME CASE OR CONTROVERSY AS PLAINTIFF'S CFAA CLAIM.................16

CONCLUSION......................................................................................................20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FAC OR FOR A MORE DEFINITE STATEMENT

# TABLE OF AUTHORITIES

**Page**

**Cases**

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)............................................................................................ 8, 14

Brooks v. AM Resorts, LLC, No. 11-995,
2013 U.S. Dist. LEXIS 93372 (E.D. Pa. July 3, 2013)........................................ 14, 15

Craigslist, Inc. v. Naturemarket, Inc.,
694 F. Supp. 2d 1039 (N.D. Cal. 2010 ...................................................................... 15

Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.,
616 F. Supp. 2d 805 (N.D. Ill. 2009) ................................................................... 14, 15

Delta Educ., Inc. v. Langlois,
719 F. Supp. 42 (D.N.H. 1989)................................................................................... 14

Executive Software N. Am., Inc. v U.S. Dist. Court for the N. Dist. of Cal.,
24 F.3d 1545 (9th Cir. 1994) ...................................................................................... 17

Facebook, Inc. v. Power Ventures, Inc.,
844 F. Supp. 2d 1025 (N.D. Cal. 2012) ..................................................................... 13

Geist v. OneWest Bank,
No. C 10-1879 SI, 2010 WL 3155841(N.D. Cal. Aug. 9, 2010) ................................... 9

Hitachi Home Elec., Inc. v. Yuen,
157 F.R.D. 477 (C.D. Cal. 1993) ............................................................................... 14

I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.,
307 F. Supp. 2d 521 (S.D.N.Y. 2004)........................................................................ 13

In re Apple In-App Purchase Litig.,
855 F. Supp. 2d 1030 (N.D. Cal. 2012) ....................................................................... 9

In re Facebook Privacy Litig,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................................... 16

In re Google Android Consumer Protection Privacy Litig.,
No. 11-02264 JSW, 2013 U.S. Dist. LEXIS 42724 (N.D. Cal. Mar. 26, 2013) ............16

In re iPhone Appl. Litig., No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865
(N.D. Cal. Sept. 20, 2011) ......................................................................................... 16

*LVRC Holdings v. Brekka,*
581 F.3d 1127 (9th Cir. 2009) ............................................................................ 10

*Margarita Cellars v. Pacific Coast Packaging, Inc.,*
189 F.R.D. 575 (N.D. Cal. 1999)......................................................................... 14

*MediterraneanCoins, GmbH v. EBay Inc.,*
No. C 05-3533 JF, 2005 U.S. Dist. LEXIS 30876 (N.D. Cal. Nov. 14, 2005)................17, 18

*Mintel Int'l Group, LTD v Neergheen,*
No. 08-3939, 2010 WL 145786 (N.D. Ill. Jan. 12, 2010) ..................................... 14

*Multiven, Inc. v. Cisco Sys.,*
725 F. Supp. 2d 887 (N.D. Cal. 2010) ................................................................. 13

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG,*
No. C 06-02064 JW, 2011 WL 6329854 (N. D. Cal. Nov. 8, 2011) ...................... 9

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984)............................................................................................... 9

*Sagan v. Apple Computer, Inc.,*
874 F. Supp. 1072 (C.D. Cal. 1994) ..................................................................... 14

*Shurgard Storage Ctrs. Inc. v. Safeguard Self-Storage Inc.,*
119 F. Supp. 2d 1121 (W.D. Wash. 2000)....................................................... 12, 13

*SuccessFactors, Inc. v. Softscape, Inc.,*
544 F. Supp. 975 (N.D. Cal. 2008) ....................................................................... 13

*United States v. Nosal,*
No. 08-0237, 2010 WL 934257 (N.D. Cal. Jan. 6, 2010)..................................... 10

*Usher v. City of Los Angeles,*
828 F.2d 556 (9th Cir. 1987) ................................................................................. 9

*Weingand v. Harland Fin. Solutions, Inc.,*
No. C-11-3109 EMC, 2012 WL 2327660 (N.D. Cal. June 19, 2012) ................... 11

**Statutes**

Cal. P. Code § 502(c)(2) ....................................................................................... 15

F.R.C.P. 12(e) ...................................................................................................... 14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FAC OR FOR A MORE DEFINITE STATEMENT

18 U.S.C. § 1030(g) ........................................................................................................ 9, 12

18 U.S.C. §1030(a)(2)(C) ................................................................................................... 9

18 U.S.C. §1030(a)(4) ........................................................................................................ 9

18 U.SC. §1030(e)(8) ....................................................................................................... 12

18 U.S.C. § 1030(e)(11) .................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FAC OR FOR A MORE DEFINITE STATEMENT

# STATEMENT OF THE ISSUES

1.    Whether ENKI has properly alleged the elements of a civil claim under the Computer Fraud and Abuse Act (the "CFAA") and, in particular, whether ENKI has properly alleged the elements of "damage" and/or "loss" by alleging ENKI lost $9,000 because it was forced to investigate Defendants' wrongful conduct and to create new safety measures to protect its Proprietary Information from future theft.

2.    Whether, in connection with its CFAA claim, ENKI has properly alleged that Defendants improperly accessed a "protected computer" by accessing the Nimsoft servers and software -- which are undisputedly owned by ENKI and constitute ENKI's proprietary, trade secret information -- without ENKI's authorization.

3.    Whether ENKI has sufficiently alleged a claim under the California Computer Data Access and Fraud Act where ENKI has alleged that Defendants accessed the Nimsoft servers without ENKI's authorization and Defendants accessed those servers by overcoming certain technical barriers.

4.    Whether this Court should exercise its discretion and assert supplemental jurisdiction over ENKI's claims against Freedman for breach of contract pursuant to 28 U.S.C. § 1367, when the facts and circumstances concerning the breach of contract claims (i) will undisputedly be part of the litigation and subject to discovery (provided the Court does not dismiss the Federal claim (*i.e.* the CFAA claim)), and (ii) share a common nucleus of facts and circumstances with ENKI's CFAA claim.

5.    Whether, ENKI is required to provide any additional facts in order to satisfy its pleading requirements under well-accepted Federal law.

# PRELIMINARY STATEMENT

In an effort to avoid discovery -- and avoid producing evidence confirming their theft of ENKI's trade secrets -- Defendants have moved to dismiss the First Amended Complaint (the "FAC") by arguing that (i) ENKI has not adequately alleged a claim under the federal Computer Fraud and Abuse Act ("CFAA") (and, therefore, this Court lacks subject matter jurisdiction over the action), (ii) ENKI has failed to state a claim under the California Computer Data Access and Fraud Act ("CDAFA"), and (iii) ENKI's claims for breach of contract are not reasonably related to ENKI's CFAA claim such that this Court should exercise supplemental jurisdiction over them. But as set forth more fully below, Defendants' motion either ignores (or misconstrues) the allegations in the FAC, the plain and unambiguous terms of the MSA-SOW[1] and/or the relevant case law. As such, Defendants' motion should be denied in its entirety. In particular, Defendants' motion should be denied for the following three reasons:

First, ENKI has plainly alleged a claim under the CFAA. Defendants argue that ENKI's CFAA claim should be dismissed because ENKI did not allege that (i) Defendants accessed a "protected computer" or (ii) ENKI suffered the type of "loss" necessary to sustain a claim. But the FAC makes abundantly clear that ENKI spent $9,000 to assess Defendants' unauthorized access of the Nimsoft servers and to then ensure that such access did not happen again. And under well-established law (including decisions from this Court), such damages plainly suffice to provide ENKI with standing to assert its claims. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1039 (N.D. Cal. 2012); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008); *Multiven, Inc. v. Cisco Sys. Inc.*, No. C 08-05391 JW, 2010 WL 2889262, at *2 (N.D. Cal. July 20, 2010).

---

[1] The Master Services Agreement and the Statement of Work between Zuora and ENKI are incorporated by reference in the FAC.

- 2 -

Moreover, ENKI has plainly alleged that the Nimsoft servers were "protected computers" as that term is defined under the statute. As Defendants well know, the Nimsoft servers are "virtual servers" that ENKI created to house Nimsoft on the physical servers owned by Zuora. These virtual servers function no differently than the physical servers they reside on and are "protected" in the same manner that one would protect a physical server. In addition, the SOW makes clear that ENKI is the only party with "root log-in" access to the Nimsoft servers, meaning that ENKI -- and only ENKI -- was permitted *to access* and change the coding on the Nimsoft servers (which is why ENKI was entirely within its rights to deny Zuora/Freedman access to those servers when they requested it prior to the instant litigation). Thus, when Freedman, Freeform and/or Zuora ignored ENKI's instructions and the parties' agreements by accessing the Nimsoft servers, they violated the CFAA and gave ENKI a basis to assert a federal claim. Accordingly, this Court now has subject matter jurisdiction over the action.

Second, ENKI has plainly set forth a violation of the CDAFA because the FAC alleges that Defendants accessed secured servers without authorization. In fact, ENKI has explicitly alleged that the Nimsoft servers contained proprietary scripts and codes that Defendants were not permitted to access. Thus, Defendants' motion to dismiss this claim should be denied.

Finally, this Court should assert supplemental jurisdiction over ENKI's breach of contract claims, which allege that Freedman breached his Separation Agreement with ENKI in his attempt to oust ENKI from its role with Zuora. Indeed, ENKI has alleged that Freedman breached the Separation Agreement by, among other things, disparaging ENKI to Zuora personnel, disclosing the terms of the Separation Agreement and violating certain non-compete provisions contained therein. All of this conduct arises out of the same core of facts and

- 3 -

circumstances as set forth in ENKI's CFAA claim and, therefore, should be heard in this action.[2] And if the Court keeps ENKI's CFAA claim (as it should), the facts underlying ENKI's breach of contract claims will undisputedly be subject to discovery in this action (since they are also part of ENKI's Seventh claim, which Defendants acknowledge is subject to this Court's supplemental jurisdiction). Thus, for this reason too, Defendant's motion should be denied.

### STATEMENT OF FACTS[3]

A.    The Parties' Relationships

ENKI is a Colorado based company that provides enterprise-grade IT services to companies. (*See* Compl. at ¶ 18.) Freedman was, until May of 2011, a member of ENKI, at which time he decided to leave. (*See* Compl. at ¶¶ 18-19.) To memorialize the rights and obligations of the parties after Freedman's departure, the parties entered into a separation agreement dated as of June 8, 2011, (the "Separation Agreement"). Pursuant to the Separation Agreement, the parties agreed that (i) Freedman would sell, and ENKI would buy, Freedman's interests in ENKI for a lump sum payment, (ii) Freedman would honor the non-compete and non-solicitation provisions contained in ENKI's Operating Agreement, and (iii) neither party would disparage one another and/or reveal the Separation Agreement's contents. (*See* Compl. at ¶ 21.)

---

[2]    Defendants concede -- as they must -- that this Court plainly has grounds to exercise supplemental jurisdiction over ENKI's claims under the CDAFA and for misappropriation of trade secrets, unfair competition and intentional interference with contractual relations which directly implicate Defendants' unauthorized access of the Nimsoft servers and -- accordingly -- flow from the same facts as the CFAA claim. (Defts.' Mem. at 15).

[3]    The facts of this case are set forth in detail in the FAC and the Declaration of David Durkee, submitted simultaneously herewith, and will not be repeated at length, but are fully incorporated, herein. *See Lerner v. Ehrlich*, 35 Cal. Rptr. 106, 109 (1963) (considering factual allegations in affidavit presented in opposition to summary judgment motion).

After Freedman left ENKI, Zuora engaged ENKI to provide cloud computing and other IT services. (*See* Compl. at ¶ 23.) The services to be performed by ENKI were memorialized in the master services agreement dated January 4, 2012 (the "MSA") and a statement of work dated as of February 2012 (the "SOW"). (*See* Compl. at ¶¶ 23-25.) The MSA-SOW also delineated between the intellectual property that ENKI owned (and would continue to own after the termination of the MSA-SOW) and the intellectual property that Zuora would ultimately acquire. (*See* Compl. at ¶¶ 26-29.) Thus, for example, ENKI owned, and would continue to own, any "software design and coding" that it performed in connection with providing its services (because such work was defined as "Out of Scope" work in the SOW and, therefore, did not constitute "Work Product" under the MSA[4]). (*See* Compl. at ¶ 29.)

**B.   Nimsoft**

As part of its monitoring of Zuora's data center, ENKI and Zuora agreed to use Nimsoft, a software system that is produced by Computer Associates. (*See* Durkee Decl. at ¶ 6.) The Nimsoft software ("Nimsoft") monitors the resources and performance in a computer system (such as CPU usage and frequency, the amount of free memory (RAM), and performance and availability of software applications that Zuora used to services its clients), and displays such performance metrics to the end user. (*See* Compl. at ¶ 48.)

Typically, ENKI loads Nimsoft onto a designated server that is connected to its client's data system. (*See* Compl. at ¶ 49.) Aside from providing better functionality, loading Nimsoft onto its own, private, server allows ENKI to ensure that its intellectual property is protected (because non-ENKI employees are not permitted to access that server without an appropriate password and keys). (*See* Compl. at ¶ 51.)

---

[4] Because the Nimsoft coding and software did not constitute "Work Product", ENKI was not required to assign it to Zuora or provide Zuora any license to use it. (*See* Durkee Decl., Ex. A [MSA], at §7.02.)

In this case, ENKI used "virtual servers" -- *i.e.*, a commercially available software product that is programmed to function like the typical hardware server sold in stores (*see* Durkee Decl. at ¶ 6)[5] -- and loaded these virtual servers (which are the "Nimsoft servers" referred to in the FAC) onto a hardware server owned by Zuora. These Nimsoft servers were wholly independent of the servers owned by Zuora. Indeed, they had separate log-in information, were password protected, and appeared to outsiders as wholly separate and distinct servers from those owned by Zuora. (*Id.*)

ENKI then loaded Nimsoft onto the Nimsoft servers to monitor Zuora's data systems. (*See* Compl. at ¶ 49; Durkee Decl. at ¶ 6.) As is typical with ENKI's clients, Zuora provided ENKI with certain parameters that Zuora wanted ENKI to monitor in order to most efficiently and reliably run the software Zuora used to service its clients. (*See* Compl. at ¶ 49.) ENKI then used its trade secret and proprietary know-how to program Nimsoft to meet Zuora's needs. (*See* Compl. at ¶ 49.)

The codes and scripts that ENKI used to program Nimsoft are, by definition, "software design and coding" and, therefore, remained ENKI's proprietary information. (*See* Compl. at ¶ 29.) In fact, the SOW made clear that "[a]ny non-Zuora software . . . or tools owned and utilized by ENKI for delivering the Services [such as Nimsoft] . . . shall remain the property of ENKI." (*See* Compl. at ¶¶ 29, 50; Durkee Decl., Ex. B [SOW] at §10(m).) The MSA also made clear that ENKI

> [R]eserves all rights in its ideas, concepts, know-how, methodologies, processes, technologies, algorithms, techniques and other intellection property of every kind and description (except as otherwise expressly agreed in writing) and no provision of this Master Agreement shall be construed to transfer any [ENKI's] rights in such intellectual property.

---

[5] Notably, ENKI created these "virtual servers" by using a template provided to it by Zuora.

(*See* Durkee Decl., Ex. A [MSA] at §7.01.)

Finally, the SOW stated that "ENKI shall retain sole root login capability to Client servers, including management and application infrastructure" (meaning that ENKI -- and only ENKI -- could access the Nimsoft servers as the "administrator"). (*See* Durkee Decl., Ex. B [SOW] at §5(b).)

Consistent with these provisions, ENKI repeatedly told Zuora that it could not access the Nimsoft servers or Nimsoft itself because the information contained thereon constituted ENKI's proprietary information. (*See* Durkee Decl. at ¶ 12.) Thus, for example, ENKI rejected Zuora's request to access Nimsoft shortly after the execution of the SOW because such access would "compromise ENKI's ability to hold the liability for the SLA response." (*See* Compl. at ¶ 52.) In other words, if Zuora had any access to Nimsoft, ENKI could no longer ensure that the monitoring system would perform as required under the SOW (which is precisely what Zuora had hired ENKI to do).

C.    Freedman Interferes with ENKI's Relationship with Zuora

Soon after he arrived at Zuora, Freedman attempted to interfere with ENKI's relationship with Zuora. (*See* Compl. at ¶ 33.) Among other things, Freedman disparaged ENKI and disclosed confidential information that he otherwise was not entitled to reveal. (*See* Compl. at ¶¶ 35, 38, 77, 84-85.)

Upon information and belief, Freedman ultimately convinced Zuora that he could do ENKI's job by himself. (*See* Compl. at ¶ 40.) Zuora, therefore, attempted to terminate ENKI in or about February of 2013. (*See* Compl. at ¶ 54.) But in order for Zuora to transition from ENKI to Freeform as seamlessly as possible -- and to avoid paying ENKI the service fees necessary to effectuate a smooth transition -- Defendants decided to break into the Nimsoft servers and obtain the proprietary information that ENKI had programmed on Nimsoft. (*See*

- 7 -

Compl. at ¶ 56.) Without this information, Zuora would have had to create a new monitoring system (with the attendant codes and scripts necessary to customize it for Zuora's needs from scratch) in order to ensure that the software-based services it was providing were operating reliably and efficiently. (*See* Durkee Decl. at ¶ 16.) But because Freedman[6] accessed the Nimsoft servers and ENKI's Nimsoft coding to obtain ENKI's proprietary information, Zuora was able to prematurely end its relationship with ENKI and avoid paying ENKI hundreds of thousands of dollars in fees.

When ENKI discovered that Defendants had improperly accessed Nimsoft, it was forced to (i) assess what Defendants had actually accessed and the functionality of the Nimsoft system, and (ii) re-secure the Nimsoft servers to prevent future theft. (*See* Compl. at ¶ 64.) This figure, however, does not include in man hours and dollars spent. But this figure does not include ENKI's legal fees or the hundreds of thousands of dollars that ENKI has lost in potential fees that Zuora could now avoid paying and/or earned fees that Zuora has decided not to pay at all.

## LEGAL ARGUMENT

A well-pled complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss, a plaintiff need only "provide the 'grounds' upon which his claim rests" through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8(a)(2) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

---

[6] ENKI later learned that a senior systems administrator at Zuora improperly accessed Nimsoft. (*See* Compl. at ¶ 56.)

Moreover, on a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, No. C 06-02064 JW, 2011 WL 6329854, at *2 (N. D. Cal. Nov. 8, 2011) (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)); *see also In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1036 (N.D. Cal. 2012). "The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim." *Geist v. OneWest Bank*, No. C 10-1879 SI, 2010 WL 3155841, at *2 (N.D. Cal. Aug. 9, 2010).

Here, ENKI's 27-page FAC clearly satisfies this threshold pleading standard. Accordingly, Defendants' motion should be denied.

## POINT I

### THE FAC STATES A CLAIM FOR RELIEF UNDER THE COMPUTER FRAUD AND ABUSE ACT

The Computer Fraud and Abuse Act ("CFAA") provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages, injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).[7] Here, ENKI has alleged that Defendants violated two separate provisions of the CFAA (namely 18 U.S.C. §1030(a)(2)(C) and 18 U.S.C. §1030(a)(4)) and that ENKI suffered a "loss" of more than $5,000.00 as a result of Defendants' misconduct. (*See* Compl. at

---

[7] In order to state a claim pursuant to Subsection (a)(2) of the CFAA, a plaintiff must allege that the defendant intentionally accessed a protected computer, without or exceeding authorization, and thereby obtained information from a protected computer. 18 U.S.C. § 1030(a)(2). In order to establish a claim pursuant to Subsection (a)(4) of the CFAA, a plaintiff must allege that the defendant knowingly, and with the intent to defraud, accessed a protected computer, without or exceeding authorization, furthering the intended fraud and obtained "anything of value." 18 U.S.C. 1030 (a)(4). A trade secret, by definition, is information that derives independent economic value and has been recognized to be exactly the type of "anything of value" that is protected by CFAA. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984).

¶63.) Nonetheless, Defendants have moved to dismiss this claim on the theory that ENKI has failed to allege (i) "loss" under the CFAA (and, therefore, lack standing to bring a civil claim under that statute) and (ii) that Defendants accessed a "protected" computer without authorization. Neither argument has merit.

## A. The FAC Sufficiently Alleges That Defendants Accessed ENKI's Protected Computers Without Authorization or in Excess of Their Authorized Access

According to Defendants, ENKI cannot satisfy its pleading burden under the CFAA because Zuora owned the hardware servers on which Nimsoft and the Nimsoft servers were located. Thus, according to Defendants, ENKI can never establish that Defendants lacked the authority to access ENKI's proprietary information that was stored on these servers. (Defts.' Mem. at 13.) Defendants' argument, however, is not supported by the CFAA, relevant Ninth Circuit authority or common sense. Thus, it should be rejected.

For purposes of determining liability under the CFAA, the critical question in determining whether a defendant "exceeded its authority" is <u>not</u> whether the defendant "owned" or could access the computer in general. Rather, the question is whether the defendant could access the specific files in question. Thus, for example, an employee that is authorized to access certain drives on a computer, but is not authorized to access the F-drive of the computer, will violate the CFAA by accessing the F-drive without his employer's prior consent. *United States v. Nosal,* No. 08-0237, 2010 WL 934257, at \*6 (N.D. Cal. Jan. 6, 2010); *LVRC Holdings v. Brekka,* 581 F.3d 1127, 1135 (9th Cir. 2009) ("The definition of the term 'exceeds authorized access' from §1030(e)(6) implies that an employee can violate employer-placed limits on accessing information stored on the computer [and be liable under the CFAA] and still have authorization to access that computer."). Moreover, the CFAA (unlike California's Section 502) does not require the plaintiff to establish that the defendant violated some "technological

- 10 -

barrier" (even though that is what Defendants did here). *See Weingand v. Harland Fin. Solutions, Inc.*, No. C-11-3109 EMC, 2012 WL 2327660, at *3 (N.D. Cal. June 19, 2012).

*Weingand* is on point. In that case, a former employee was given access to a computer owned by the company for the purpose of recovering "personal files" after termination. *Weingand*, 2010 WL 2327660, at *2. When the company provided the former employee with the computer, he accessed and copied critical business files that were unrelated to his "personal files." *Id.* In finding that the employee violated the CFAA, the court reasoned that the employee's access of critical business files violated the verbal authorization that the company had granted the employee. *Id.* Moreover, the court rejected the employee's suggestion that he did not exceed access because he had not violated any "code" authorization (such as bypassing a password or security measure). *Id.* Specifically, the court held that "the fact that *Nosal* uses the word 'authorization' interchangeably with 'permission,' suggests that one need not engage in such rigorous technological measures to block someone from accessing files in order to limit their 'authorization.'" *Id.* at *3.

Here, like in *Weingand*, Zuora was not permitted to access the Nimsoft servers or Nimsoft. In fact, the MSA and SOW make clear that ENKI owned the Nimsoft servers and coding because (i) the Nimsoft "design and coding" is, by definition, "software design and coding" and, therefore, constituted "Out of Scope Work" under the MSA and SOW (which means that it remained ENKI work product throughout the entire engagement), (ii) the MSA-SOW provided that ENKI owned its intellectual property and software (and would continue to own its intellectual property and software after the engagement), and (iii) the MSA-SOW provided ENKI (and only ENKI) with root login access.

Similarly, ENKI repeatedly told Zuora that ENKI was the only party with authority to access Nimsoft. Thus, when Zuora requested that Freedman be given "access to

- 11 -

Nimsoft", ENKI denied Zuora's request, explaining that: "[p]roviding access to anyone outside of ENKI to write changes to the monitoring system would compromise [ENKI's] ability to hold the liability for this SLA Response." (*See* Compl. at ¶ 52.) Put simply, ENKI "owned" Nimsoft and Zuora was <u>not</u> allowed to access it or the Nimsoft servers (even though it owned the hardare servers upon which Nimsoft resided). Thus, when Zuora accessed Nimsoft without ENKI's authorization, it accessed a "protected computer" under the CFAA. Accordingly, ENKI has sufficiently alleged a claim under the CFAA and Plaintiffs' motion should be denied for this reason alone.

## B. ENKI Has Alleged the Type of Damages/Loss Recognized by the CFAA

Defendants also argue that ENKI has failed to meet the "civil jurisdictional element for civil suits" under the CFAA and therefore lacks standing to bring a claim. (Defts.' Mem. at 10.) In support of this argument, Defendants claim that ENKI has failed to allege facts sufficient to establish either: (i) "damage" (since ENKI purportedly does not allege any "impairment to the integrity or availability of any data, program, system or information"), or (ii) "loss" (since ENKI purportedly does not allege that it suffered "any interruption of service") (Defts.' Mem. at 10-11.)

Of course, Defendants concede (as they must) that ENKI is only required to allege one type of injury (not both). (Defts.' Mem. at 10); *see also* 18 U.S.C. § 1030(g) ("any person who suffers damage *or* loss"). Regardless, ENKI has adequately alleged the damages/loss requirement under the CFAA and well-settled Ninth Circuit law.

Indeed, the CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. 1030(e)(8). "The word 'integrity' in the context of data necessarily contemplates maintaining the data in a protected state." *Shurgard Storage Ctrs. Inc. v. Safeguard Self-Storage Inc.*, 119 F. Supp. 2d 1121, 1126-

- 12 -

27 (W.D. Wash. 2000) (noting that where the defendant allegedly infiltrated the plaintiff's computer and collected and disseminated confidential information, there was an "impairment of its integrity," even though "no data was physically changed or erased."); *see also Multiven, Inc. v. Cisco Sys.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010) (recognizing that loss of confidentiality is "damage" within the meaning of the Act).

Similarly, the term "loss" has been broadly interpreted to include "any reasonable cost to any victim, including the cost of responding to an offense... [and any] cost incurred, or other consequential damages incurred because of interruption in service." *See* 18 U.S.C. § 1030(e)(11). In the Ninth Circuit, "[c]osts associated with investigating intrusions into a computer network and taking subsequent remedial measures are loss within the meaning of the [CFAA]." *See Facebook, Inc. v. Power Ventures, Inc.,* 844 F. Supp. 2d 1025, 1039 (N.D. Cal. 2012); *see also SuccessFactors, Inc. v. Softscape, Inc.,* 544 F. Supp. 975, 981(N.D. Cal. 2008) (holding that the cost of discovering the offender's identity or method of access may be a "loss" for purposes of the CFAA). Moreover, it is well-settled that "loss" under the CFAA does not require physical damage or interruption of service.

Here, ENKI has alleged that Defendants accessed the Nimsoft servers and obtained confidential and trade secret information regarding ENKI's proprietary programming and monitoring systems. (*See* Compl. at ¶ 62.) Moreover, ENKI has claimed that it "lost $9,000 because it was forced to investigate Defendants' wrongful conduct and create new software in order to protect its proprietary information." (*Id.* at ¶ 64.) Such allegations are plainly sufficient to allege the loss/damage element under the CFAA. *See I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.,* 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004) (noting that "loss" was properly alleged where plaintiff alleged that "defendant's unauthorized activity with respect to the e-

Basket system…forced plaintiff to incur costs of more than $5,000 in damage assessment and remedial measures.").

Notwithstanding ENKI's straightforward allegations, Defendants ask this Court to order ENKI to provide a more "definite statement."[8] (Defts.' Mem. at 1, 18.) Such an argument, however, runs afoul of *Twombly*, which requires that a plaintiff only plead facts sufficient to make the claim *non-speculative*. *Twombly*, 550 U.S. at 590. Moreover, Defendants cite to no Ninth Circuit authority to support their claim. Instead, Defendants rely on *Brooks v. AM Resorts, LLC*, No. 11-995, 2013 U.S. Dist. LEXIS 93372 (E.D. Pa. July 3, 2013), *Mintel Int'l Group, LTD v Neergheen*, No. 08-3939, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010) and *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805 (N.D. Ill. 2009) to suggest that ENKI's allegations of "loss" are somehow "unclear". (Defts.' Mem. at 11.) But none of Defendants' cases involves a motion to dismiss based upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Mintel Int'l Group*, 2010 WL 145786, at *1 (concluding that Defendant did not violate the CFAA after "consider[ing] the evidence presented at *trial*") (emphasis added); *Del Monte*, 616 F. Supp. 2d at 812 (granting

---

[8] For all the reasons set forth above, Defendants' request that ENKI provide a more definitive statement should be denied. Under Rule 12(e) of the Federal Rules of Civil Procedure, "[i]f a pleading is ... so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement...." A Rule 12(e) motion is proper only when the complaint is so indefinite that the defendant cannot determine the nature of the claim being asserted. *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (other citations omitted). Such motions "are viewed with disfavor and rarely granted because of the minimal pleading requirements of the Federal Rules." *Sagan*, 874 F. Supp. at 1077; *accord Margarita Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). If the detail sought by the motion is obtainable through discovery, the motion should be denied. *Hitachi Home Elec., Inc. v. Yuen*, 157 F.R.D. 477, 479 (C.D. Cal. 1993). A more definite statement is required only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Margarita Cellars*, 189 F.R.D. at 578 (quoting *Delta Educ., Inc. v. Langlois*, 719 F. Supp. 42, 50 (D.N.H. 1989)). Here, ENKI's FAC plainly provides sufficient facts such that Defendants are capable of understanding the claims alleged against them. And that is all ENKI is obligated to provide.

- 14 -

Defendants motion for *summary judgment* on plaintiff's CFAA claim); *Brooks,* 2013 U.S. Dist. LEXIS 2323, at *1 (same). In fact, in *Del Monte,* the court *explicitly distinguished* between its decision pursuant to Rule 56 and what it suggests would have been its decision had the motion been made prior to discovery. To wit, "[t]his is not a motion to dismiss. Therefore, the Court cannot blindly accept the allegation that [Plantiff] conducted a 'damage assessment'." 616 F. Supp. 2d at 812 (emphasis added). Defendants' arguments, therefore, must be rejected, and ENKI should be permitted to pursue discovery on its CFAA claim.

## POINT II

### ENKI STATES A CLAIM UNDER THE COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA")

Defendants also argue that ENKI fails to state a claim under the CDAFA because ENKI does not allege "that there were any technical or code-based barriers that Defendants overcame in order to view and copy the Nimsoft files. (Defts.' Mem. at 15.) Defendants are wrong.

The CDAFA makes it a public offense for a person to: "[k]nowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system or computer network." Cal. P. Code § 502(c)(2). Here, in addition to setting forth these allegations (*see* Point I(A) *supra*), the FAC clearly alleges that Defendants purposefully accessed the Nimsoft servers, without permission, and copied and made use of ENKI's proprietary information residing thereon.

Moreover, ENKI has specifically alleged that the Nimsoft servers were protected and that Defendants did not have the right to access them. (*See* Compl. at ¶ 51.) Such allegations plainly suffice under relevant California law. *Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1057 (N.D. Cal. 2010) (finding that plaintiff had sufficiently stated a

- 15 -

claim under Section 502 where plaintiffs alleged that defendants knowingly accessed their computer system in violation of the parties' contract, that they did so without authorization, and that they copied and made use of plaintiff's data).

Defendants' cases are not to the contrary. For example, in *In re Facebook Privacy Litig.*, the court only held that the plaintiffs could not sustain a CDAFA claim because their "own allegations" made clear that there were "no technical barriers blocking Defendant from accessing *its own* website." 791 F. Supp. 2d 705, 716-17 (N.D. Cal. 2011) (emphasis added). *See also In re iPhone Appl. Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865, at *37-38, 40 (N.D. Cal. Sept. 20, 2011) (holding that plaintiff cannot allege a claim under the CDAFA where the applications that contained the "surreptitious coding" were "all installed or updated voluntarily by Plaintiffs"); *In re Google Android Consumer Protection Privacy Litig.*, No. 11-02264 JSW, 2013 U.S. Dist. LEXIS 42724 (N.D. Cal. Mar. 26, 2013) (same). Here, Defendants are not accessing their own website or updating their own software: rather, ENKI has alleged that Defendants accessed proprietary scripts and codes owned by ENKI and maintained by ENKI on its *private* servers. (*See* Compl. at ¶¶ 50-52, 67-69). Thus, ENKI has plainly stated a claim under the CDAFA.

### POINT III

### THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIMS BECAUSE THEY ARE PART OF THE SAME CASE OR CONTROVERSY AS PLAINTIFF'S CFAA CLAIM

Defendants concede, as they must, that if ENKI's CFAA claim survives (which, for the reasons addressed in Point I *supra*, it should), this Court should exercise supplemental jurisdiction over ENKI's CDAFA claim and its claims for misappropriation of trade secrets, intentional interference with contractual relations, and unfair competition (Plaintiff's Second, Sixth, and Seventh and Eighth Claims). Indeed, each of these claims, arises out of the very

- 16 -

same core of facts as ENKI's CFAA claim (*i.e.*, Defendants' unauthorized access of the Nimsoft servers). Thus, this Court should undisputedly exercise its power to assert jurisdiction over these claims as well.

Defendants, however, still ask the Court to refuse to exercise supplemental jurisdiction over Plaintiff's three breach of contract claims against Freedman (the Third, Fourth and Fifth Claims for Relief). For the reasons set forth below, Defendants' request should be denied.

When a district court is asked to exercise its discretion to assert jurisdiction over state law claims, it must consider the "values of judicial economy, convenience, fairness and comity". *See Executive Software N. Am., Inc. v U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1552 (9th Cir. 1994). Where the plaintiff's claims "arise out of the same general factual allegations" courts in this circuit routinely exercise their supplemental jurisdiction. *Mediterranean Coins, GmbH v. EBay Inc.*, No. C 05-3533 JF, 2005 U.S. Dist. LEXIS 30876, at *8 (N.D. Cal. Nov. 14, 2005) (exercising supplemental jurisdiction over fourteen state law claims ranging from breach of contract, to interference with contract, to defamation, and trade libel where plaintiff also alleged claims under the Electronic Communications Privacy Act). In fact, once a common nucleus of facts have been shown, the exercise of supplemental jurisdiction is virtually mandatory. *See Executive Software*, 24 F.3d at 1555-56. Under this rubric, there can be little dispute that this court should exercise supplemental jurisdiction over all of ENKI's state law claims.

Indeed, ENKI's three breach of contract claims against Freedman allege that Freedman breached the Separation Agreement by, *inter alia*, (i) utilizing proprietary information (such as the knowledge of Nimsoft that Freedman gained while working at ENKI), (ii) disclosing the terms of the Separation Agreement and (iii) improperly disparaging ENKI.

- 17 -

Plainly, the first breach of contract claim (Count III of the FAC) arises out of the same common nucleus of facts as the CFAA claim because ENKI has alleged that Freedman breached the Separation Agreement by using his knowledge of Nimsoft to access the Nimsoft server and acquire ENKI's Proprietary Information.

ENKI's remaining breach of contract claims are also sufficiently related to the CFAA claim such that this Court should exercise its discretion and assert jurisdiction over them. Indeed, ENKI has alleged that Freedman disparaged ENKI and disclosed the terms of the Separation Agreement as part of his grander plan to oust ENKI from its role at Zuora. (*See* Compl. at ¶ 56.) And when it appeared that Zuora was going to terminate ENKI (after Freedman's breaches of the Separation Agreement), Freedman and Zuora improperly accessed the Nimsoft server, and configurations and software and stole ENKI's trade secret information.

All of Defendants' misconduct -- including Freedman's disparagement of ENKI and disclosure of the Separation Agreement-- constitutes the basis of ENKI's seventh claim for tortious interference. (*See* Compl. at ¶¶ 99-107.) Remarkably, Defendants concede that the Court has supplemental jurisdiction over this claim (provided it has subject matter jurisdiction over the CFAA claim). (Defts.' Mem. at 19.) Thus, even if the Court were to refuse to exercise supplemental jurisdiction over ENKI's Fourth and Fifth claims for breach of contract against Freedman, the facts and circumstances surrounding the aforementioned conduct will still be subject to discovery. Judicial economy, therefore, strongly favors the Court's exercise of its jurisdiction over the breach of contract claims.

Finally, Defendants' argument that the breach of contract claims "predominate" over the CFAA claim rings hollow. Indeed, courts in this circuit have exercised jurisdiction over entire complaints where the state law claims outnumbered the federal law claims 15 to 1. *See MediterraneanCoins, GmbH.*, 2005 U.S. Dist. LEXIS 30876. Here, Defendants have

- 18 -

conceded that the court has jurisdiction over 5 of ENKI's claims (and asks that the Court dismiss three of them).

Moreover, the ultimate goal of Defendants' misconduct -- to render ENKI superfluous -- was achieved by Defendants' unauthorized access to the Nimsoft servers and their copying of ENKI's proprietary information. The breaches of contract were merely steps taken to reach that ultimate goal. And the most significant aspect of ENKI's damages will likely flow from the losses it suffered _after_ Defendants accessed Nimsoft and stole ENKI's proprietary data. Thus, if anything, ENKI's CFAA claim "predominates" over its state law claims (not the other way around). Accordingly, this Court should retain jurisdiction over this matter, and exercise supplemental jurisdiction over all of ENKI's state law claims.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Joint Motion to Dismiss in its entirety and grant any such further relief the Court deems just and proper.


DATED:         September 23, 2013

                                        HERRICK, FEINSTEIN LLP
                                        David Feuerstein (admitted *pro hac vice*)
                                        Jessica Natbony (admitted *pro hac vice*)
                                        Marisa A. Leto (admitted *pro hac vice*)


                                        KAWAHITO SHRAGA & WESTRICK LLP
                                        David R. Shraga


                                        By:    /s/ David R. Shraga
                                                DAVID R. SHRAGA

                                        Attorneys for Plaintiff
                                        ENKI CORPORATION