Julie S. Turner (SBN 191146)
TURNER BOYD LLP
2570 W. El Camino Real
Suite 380
Mountain View, CA 94040
Phone: (650) 521-5930
Fax: (650) 521-5931
Email: turner@turnerboyd.com

*Attorneys for Defendant*
*Zuora, Inc.*

Andrew J. Piunti (SBN 113281)
DPA LAW GROUP
1100 Lincoln Avenue, Suite 231
San Jose, CA 95125
Phone: 888-915-5520
Fax: (408) 351-4444
Email: drew@dpalawyers.com

*Attorneys for Defendants Keith Freedman*
*and Freeform Technologies, LLC*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENKI CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>KEITH FREEDMAN *et al.*,<br><br>Defendants. | Case No. 5:13-cv-02201-PSG<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ENKI CORPORATION'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**<br><br>**Date:     December 4, 2013**<br>**Time:    4:30 p.m.**<br>**Location: Courtroom 5, 4th Floor**<br>**Judge:   Hon. Paul S. Grewal** |

## I. INTRODUCTION

Plaintiff Enki's Computer Fraud and Abuse Act claim is a licensing dispute dressed up as

a federal case. Both parties' submissions demonstrate that Enki licensed Zuora to use certain

– 1 –

technology, and that Enki now believes Zuora is using that technology outside the scope of the license. Rather than bringing its contract claim into arbitration, as the parties' agreement requires, Enki instead recasts its claim as one arising under the CFAA simply to be in federal court. The CFAA is a criminal anti-hacking statute; it was not designed or intended to convert contract disputes into federal statutory claims.

This intent is evidenced by the way in which Congress defined "protected computer" in the CFAA as limited to hardware. By defining it thus, Congress limited the CFAA to those instances in which a defendant trespasses upon the devices of another. This analogy to the law of trespass is reflected in the CFAA's legislative history.[1]

Enki's CFAA claim requires one to ignore the express limitations set forth in the definition of "protected computer." Specifically, Enki seeks to stretch the definition to cover "virtual servers." Enki states in its FAC as well as in its opposition that the Nimsoft application acts as a "virtual server" and is thus a "protected computer." Should Enki be allowed to bypass the CFAA requirement that there be a trespass on another's computer hardware, then any time an owner of a "protected computer" allegedly exceeds the scope of a license for software running on that computer, the licensor will be able to bring a CFAA claim instead of a contract claim. Enki does not and cannot point to any case in which the licensor of an application was able to sue the owner of the computer on which that application ran for a violation of the CFAA. Such a vast expansion of the CFAA is neither warranted nor prudent.

Furthermore, Enki's allegations of loss do not satisfy the requirements of "loss" under the CFAA. Enki alleges that it implemented the Nimsoft application on Zuora's computers for Zuora's benefit. Any efforts that Enki exerted to determine what, if anything, Zuora copied and how to prevent Zuora from further copying, falls within the ambit of preventing future lost revenues, not fixing corruption of a computer or data. This does not constitute "loss" under the CFAA.

---

[1] *See, e.g.*, *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (en banc) ("Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking, recognizing that, '[i]n intentionally trespassing into someone else's computer files, the offender obtains at the very least information as to how to break into that computer system.' S. Rep. No. 99-432, at 9 (1986) (Conf. Rep.).").

– 2 –

Enki's CFAA claim is its only federal claim, and is the sole basis for this Court's jurisdiction. (All remaining claims are brought under state law and there is no allegation of diversity jurisdiction.) Without the CFAA claim, there is no federal subject matter jurisdiction, and no legitimate basis for this case to be in federal court. Enki's CFAA claim, and thus Enki's First Amended Complaint, should be dismissed.

## II. ARGUMENT

### A. Enki Does Not Allege That Zuora Accessed A "Protected Computer" As Required For A CFAA Claim.

To state a claim under the CFAA, a plaintiff must allege that the defendant accessed a "protected computer" without authorization.

The CFAA defines "computer" as

> an electronic, magnetic, optical, electrochemical, or other high speed data processing *device* performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such *device*, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar *device*[.] 18 U.S.C. § 1030(e)(1).

In other words, a computer is defined in terms of hardware, not application software. "Protected computer" is defined as a "computer" used by a financial institution or in interstate commerce. 18 U.S.C. § 1030(e)(2). Because "protected computer" is a subset of "computer," it, too, is limited to hardware.

The only hardware involved all belong to Zuora. Enki does not allege that Zuora lacked authorization to access its own computers. Rather, Enki alleges that the Nimsoft application is a "protected computer" because it acts as a "virtual server." Enki's identification of Nimsoft— a software program operating as a "virtual server"— cannot satisfy the requirement of a "protected computer" because Nimsoft is not hardware. Consequently, Enki has failed to state a claim under the CFAA.

### B. Enki's CFAA Claim Is Foreclosed By Ninth Circuit Precedent.

The upshot of Enki's argument is that, *by virtue of contract*, Zuora was allegedly restricted in how it could access certain data and the use to which it could put that data. The

– 3 –

Ninth Circuit expressly prohibited such a claim under the CFAA in *United States v. Nosal,* 676 F.3d 854 (9th Cir. 2012) (en banc).

In *Nosal*, the defendant left his employment at an executive search firm to start a competing business, and shortly thereafter convinced several employees at the firm to join him. *Id*. at 856. Before leaving the firm, those employees used their log-in credentials to download confidential information from the firm's computer database and transferred that information to the defendant. *Id*. While employees were authorized to access the database, the firm had a policy forbidding the disclosure of confidential information. *Id.* The government charged the defendant with violations of Section 1030(a)(4) of the CFAA "for aiding and abetting the [colleagues] in 'exceeding their] authorized access' with intent to defraud." *Id.* The government argued that the phrase "exceeds authorized access" in the CFAA could be interpreted to mean "someone who has unrestricted physical access to a computer, but is limited in the use to which he can put the information." *Id.* at 857.

The Ninth Circuit disagreed, holding that "exceeds authorized access" "does not extend to violations of use restrictions." *Id.* at 863. The Court argued that the government's interpretation of the phrase "would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." *Id.* at 857. Accordingly, because the employees were authorized to access the confidential information, the court held that they did not exceed their authorized access of the firm's computer database, even though they violated the firm's policy of disclosing confidential information. *Id.* at 864*; see also Siebert v. Gene Sec. Network, Inc*., No. 11-cv-01987-JST, Oct. 16, 2013, 2013 U. S. Dist. LEXIS 149145, at \*33-5 (N.D. Cal. Oct. 16, 2013) (following *Nosal*, 676 F.3d 854).

As in *Nosal*, Enki's real claim is that Zuora has misappropriated Enki's data, in violation of the parties' agreements. This is a claim based on a violation of use restriction placed on data located on the ***defendant's*** computer, not the plaintiff's. The *Weindgand* case cited by plaintiff is inapposite for this very reason; the computer in *Weindgand* belonged to the ***plaintiff***, not the defendant. Enki has not pointed to a single case that holds that a defendant violates the CFAA

– 4 –

1 by accessing data located on the defendant's own computer. The case for dismissal is even
2 stronger here than it was in *Nosal*.

### C. Enki Does Not Actually Allege That Zuora Was Not Authorized To Access The Nimsoft Files.

Through artful wording, Enki would have the Court believe that it is alleging that Zuora had *no right whatsoever* to access the Nimsoft files, without actually so alleging. Closer scrutiny, however, reveals that Enki alleges only that Zuora did not have a *certain kind* of access.

For example, in its FAC, at paragraph 51, Enki alleges that it was "the exclusive administrator" for the Nimsoft "servers." Therefore, Enki alleges that it alone could "review *and alter*" the Nimsoft codes and scripts. Enki further alleges that neither Zuora nor Keith Freedman had permission to access Nimsoft "*as an administrator*." Enki does not allege that Zuora had *no* right to access Nimsoft at all, in some role other than "administrator" with permission to "alter."

This is echoed in the Durkee Declaration that Enki submitted in support of its opposition to the defendants' motion. (Docket No. 25) In paragraph 11, Mr. Durkee declares only that Zuora did not have "administrator" access to the Nimsoft files. For support, Mr. Durkee quotes the SOW, which states that "Enki shall retain sole root log-in capability to Client servers, including management and application infrastructure," thus only Enki could access Nimsoft "*as the administrator*." See Durkee Decl., ¶ 11 & Ex. A (SOW) at p. 6. Mr. Durkee does not declare that Zuora had *no* access to the Nimsoft files. Indeed, the same paragraph of the SOW that Mr. Durkee quoted goes on to state that "Client's [Zuora's] designated representatives *shall have logged sudo-access* to non-shell root commands." See Durkee Decl., Ex. A (SOW) at p. 6. In other words, Zuora had the right to access the Nimsoft files, just not "as the administrator."

This theme continues in paragraph 52 of the FAC, where Enki states that Zuora requested that Freedman be given "*write* access" to Nimsoft. Enki alleges that it refused to provide Zuora with access to "*write changes* to the monitoring system." Again, Enki is not alleging that Zuora could not view or otherwise access the Nimsoft code. Enki is alleging, rather, that Zuora could not make changes to the Nimsoft code.

– 5 –

TURNER BOYD LLP
2570 W. El Camino Real, Suite 380
Mountain View, CA 94040

In the *Nosal* case, the Ninth Circuit held that the CFAA does not apply to the misuse of information that one otherwise has the right to access. *Nosal*, 676 F.3d at 863. Enki has not here alleged that Zuora had *no* access to the Nimsoft files; rather, Enki alleges only that Zuora did not have *certain levels* of access to those files. For this reason as well, Enki's CFAA claim does not comport with Ninth Circuit precedent and should be dismissed.

### D. Any Ambiguity Regarding The CFAA's Scope Should Be Construed In Favor Of Zuora.

Although it allows for civil claims, the CFAA is "primarily a criminal statute." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009). Where a statute has both criminal and civil applications, it should be construed consistently in both contexts. *Id.* at 1133. It is "well established that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Id.* (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

Even if the CFAA were ambiguous on whether a "virtual server" could be a "protected computer," or whether a defendant could be liable for accessing data on a computer that the defendant himself owns, the rule of lenity would require that this ambiguity be resolved in favor of defendant Zuora.

### E. Enki's Costs To Prevent Zuora From Accessing The Nimsoft Files Do Not Qualify As A "Loss" Under The CFAA.

Enki has alleged that it suffered a "loss" because Zuora accessed and copied Nimsoft-related files stored on Zuora's computer. Enki claims that this caused it to have to assess what Zuora did, assess the functionality of the Nimsoft system, and secure the system from future Zuora access. However, as Enki alleged and as its CEO, David Durkee, testified in his declaration, Enki implemented the Nimsoft application on Zuora's servers "to meet Zuora's needs."

The CFAA defines "loss" in relevant part as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11).

– 6 –

Enki still does not allege that any computer or program running on its systems or for its benefit was damaged or in danger of being damaged. Enki does not allege that Zuora complained that the Nimsoft application was damaged, thereby requiring Enki to expend resources to fix it. Enki does not allege that it needed to restore any data, program, system, or information to its condition prior to Zuora's alleged offense. Rather, Enki alleges that it was the victim of the misappropriation of its trade secrets.

Furthermore, Enki alleges that it went beyond the restoration of any data (since no data was lost or compromised) to implement measures to "prevent future theft." In other words, Enki spent time and effort to investigate a breach of contract and prevent a future breach of contract. Its "loss" stems entirely from its position that it, and not Zuora, owns the files associated with the Nimsoft program. Thus, any "loss" that Enki suffered was merely to prevent Zuora from further accessing files that Enki claims Zuora had no contractual right to access.

Enki's efforts to determine what, if anything, Zuora had copied and to implement measures to prevent Zuora from further copying, fall within the ambit of preventing future lost revenues, not fixing corruption of a computer or data. Under the CFAA, lost revenue costs constitute "loss" only if they relate to an "interruption of service." 18 U.S.C. § 1030(e)(11).[2] Since no interruption of service is alleged, the costs Enki incurred to protect its revenue cannot constitute "loss" as defined by the CFAA.

**F. Without A Viable CFAA Claim, There Is No Federal Subject Matter Jurisdiction.**

Enki's CFAA claim is the only basis for federal subject matter jurisdiction. The CFAA claim is the only claim based on federal law. Enki does not allege diversity jurisdiction. Thus, for the reasons set forth in Zuora's opening brief, should the CFAA claim be dismissed, the court should dismiss all remaining state law claims as well.

---

[2] "[T]he term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, ***and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service***." 18 U.S.C. § 1030(e)(11) (emphasis added).

– 7 –

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

CASE NO. 5:13-cv-02201-PSG

TURNER BOYD LLP
2570 W. El Camino Real, Suite 380
Mountain View, CA 94040

### G. Enki Still Has Not Adequately Pled A CDAFA Claim.

To state a CDAFA claim, the plaintiff must allege that the defendant circumvented some technological barrier to access a computer or data without permission. *In re Google Android Consumer Privacy Litig.,* No. 11-md-02264-JSW, 2013 U.S. Dist. LEXIS 42724, at *35 (N.D. Cal. Mar 26, 2013) ("Courts within this District have interpreted 'without permission' to require that a defendant access a network 'in a manner that circumvents technical or code-based barriers in place to restrict or bar a user's access.") (citing *Facebook, Inc. v. Power Ventures, Inc.,* 844 F. Supp. 2d 1025, 1036 (N.D. Cal. 2012); *Facebook, Inc. v. Power Ventures, Inc.,* No. C-08-05780-JW, 2010 U.S. Dist. LEXIS 93517, at *11 (N.D. Cal. July 20, 2010)); *see also Siebert v. Gene Sec. Network, Inc*., No. 11-cv-01987-JST, Oct. 16, 2013, 2013 U. S. Dist. LEXIS 149145, at *36-7 (N.D. Cal. Oct. 16, 2013) (dismissing CDAFA claim for failing to allege that defendant had to overcome any technical barrier).

In its opposition, Enki does not point to any allegation that Zuora circumvented some technical barrier to access the Nimsoft files. Rather, Enki relies on the case of *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039 (N.D. Cal. 2010), for the proposition that a CDAFA claim can be based solely on a terms of use violation, without any technological circumvention requirement.

Enki's reliance on the *Craigslist* case is misplaced for two reasons. First, the *Craigslist* case was a decision on a motion for a default judgment. Consequently, the court did not have the benefit of any argument concerning the requirements of the CDAFA.[3] Second, the plaintiff in Craig's list in fact alleged that defendants had engaged in various technological circumventions of plaintiff's security measures. For example, plaintiff alleged that defendants had circumvented plaintiff's CAPTCHA system, which is designed to prevent automated postings. See *Craigslist*, 694 F. Supp. 2d at 1050 ("Defendants also developed, advertised, and sold products and services that enable users to circumvent Plaintiff's technological security measures and to access parts of the copyright-protected craigslist website without authorization. Particularly, Defendants'

---

[3] While the *Craigslist* case is often cited for propositions related to default judgment entry, the only reliance upon its CDAFA holding is in other Craigslist default judgment cases.

– 8 –

'CraigsList AutoPoster Professional' includes an automatic CAPTCHA bypass feature that allows Defendants and its customers to circumvent Plaintiff's CAPTCHA security measure.") (internal citations to record omitted). Enki makes no similar technical circumvention allegation here.

The weight of authority requires an allegation that a defendant has overcome a technical or code-based barrier to state a CDAFA claim. Enki makes no such allegation here. Consequently, Enki has failed to state a claim under the CDAFA.

### H. The Breach Of Contract Claims Against Freedman Are Unrelated To The Federal Claim, And Should Be Dismissed.

In its opposition, at page 17, Enki argues that its three breach of contract claims against Freedman are related factually to its CFAA claim. However, as both the opposition brief and the FAC make clear, those three breach of contract claims are based on contracts between Freedman and Enki that are distinct and separate from the Zuora/Enki contracts (the MSA and SOW) on which the CFAA is based. Furthermore, the conduct at question in the contract claims against Freedman does not involve the copying and subsequent use of the Nimsoft files. Instead it involves disparagement, disclosure of terms of the separation agreement, and the use of knowledge gained while working for Enki. All of these claims are based on facts not at issue in Enki's CFAA claim against Zuora.

That Enki has also asserted a catch-all tortious interference claim that covers every act alleged in the FAC cannot change the fact that plaintiff's contract claims against Freedman do not arise out of the same general factual allegations as its CFAA claim. Indeed, if Enki is arguing that all these claims are related because they were all part of Freedman's "grander plan to oust Enki from its role at Zuora," then the acts underlying the CFAA claim were undertaken as part of a larger breach-of-contract scheme by Freedman. If that is the case, then, by Enki's own admission, the contract claims clearly predominate over the federal CFAA claim, and should be dismissed for that reason as well.

– 9 –

## III. CONCLUSION

Enki's claims against defendants are fundamentally breach of contract claims. For strategic reasons, Enki wishes to be in federal court. To do so, Enki would have the Court expand the CFAA from an anti-hacking statute to a statute that effectively covers all licensing disputes involving an internet-connected computer. Such an extension of the CFAA would contravene Ninth Circuit precedent, express statutory language, and common sense.

For the foregoing reasons, Zuora respectfully requests that the Court dismiss Enki's First Amended Complaint without leave to amend.

Dated: November 14, 2013

Respectfully submitted,

/s/ Julie S. Turner
**TURNER BOYD LLP**
Julie S. Turner (SBN 191146)
2570 W. El Camino Real
Suite 380
Mountain View, CA 94040
Telephone: (650) 521-5930

*Attorneys for Defendant*
*Zuora, Inc.*